UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**PACIFIC COAST MARINE**
**WINDSHIELDS LIMITED,**

   **Plaintiff,**

v.              Case No:  6:12-cv-33-Orl-28DAB

**MALIBU BOATS, LLC, MARINE**
**HARDWARE, INC., TRESSMARK,**
**INC., MH WINDOWS, LLC, JOHN F.**
**PUGH, and DARREN BACH,**

   **Defendants.**
_____/

# ORDER

In this patent infringement suit, Defendants, Malibu Boats, LLC, Marine Hardware, Inc., Tressmark, Inc., MH Windows, LLC, John F. Pugh, and Darren Bach, have requested pretrial claim construction by the Court. After reviewing the parties' filings and hearing argument of counsel, the Court construes the disputed claim terms as set forth herein.

## I. Background

The patents at issue in this case—U.S. Patent Nos. 7,418,917 ("the '917 Patent"), 7,441,510 ("the '510 Patent"), and D555,070 ("the '070 Patent")—relate to the design and mounting of boat windshields. The case is before the Court on Defendants' Motion for Claim Construction (Doc. 217), Plaintiff's Opposition (Doc. 241), Plaintiff's Post-Hearing Brief (Doc. 265), and Defendants' Post-Hearing Brief (Doc. 282). The Court heard oral argument on the motion on September 10, 2012.

## II.     Claim Construction Principles

Claim construction is an issue of law for the Court to decide. Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995). Claim terms "'are generally given their ordinary and customary meaning,'" and such meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

In construing claims, courts primarily examine the intrinsic evidence to define the patented invention's scope; this intrinsic evidence includes the claims themselves, the patent's specification, and the prosecution history. Id. at 1313-14; C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 861 (Fed. Cir. 2004). "A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251, 1257 (Fed. Cir. 1989); accord Phillips, 415 F.3d at 1312 ("It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." (internal citation and quotation omitted)). "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." Phillips, 415 F.3d at 1314.

The claims "do not stand alone," however; instead, "they are a part of 'a fully integrated written instrument' consisting principally of a specification that concludes with the claims." Id. at 1315 (quoting Markman, 52 F.3d at 978). Thus, "claims 'must be read in view of the specification, of which they are a part.'" Id. (quoting Markman, 52

F.3d at 979). While "'the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1571 (Fed. Cir. 1998)).

The prosecution history is another component of the intrinsic evidence used to supply the proper context for claim construction. Home Diagnostics, Inc. v. LifeScan, Inc., 381 F.3d 1352, 1356 (Fed. Cir. 2004). This history "consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." Phillips, 415 F.3d at 1317. Although the prosecution history "provides evidence of how the [Patent and Trademark Office] and the inventor understood the patent . . . it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Id. The history can, however, indicate the inventor's understanding of the invention and "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id.

In addition to intrinsic evidence, courts may also rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history," Markman, 52 F.3d at 980; however, extrinsic evidence is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" Phillips, 415 F.3d at 1317 (quoting C.R. Bard, 388 F.3d at 862) (further internal quotation omitted). Such evidence typically includes dictionaries, treatises, and testimony of the inventor or experts. Markman, 52 F.3d at 980. Technical dictionaries and treatises may help a

3

court understand the underlying technology and the manner in which one of skill in the art might use the claim terms, but technical dictionaries and treatises may provide definitions that are too broad or that may not be indicative of how the term is used in the patent. Phillips, 415 F.3d at 1319.

Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. Id. at 1318. Therefore, "a court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description and the prosecution history, in other words, with the written record of the patent." Id. (internal citation and quotation omitted). Overall, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms," and it is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Id. at 1318-19.

### III.   Analysis

#### A. Claim 23 of the '917 Patent

The parties ask the Court to construe two disputed phrases in Claim 23[1] to resolve whether the claim requires the disclosed "base member and windshield

---

[1] Claim 23 states in its entirety:

A marine windshield mounting system for fitting a curved windshield to a boat deck of a boat, the mounting system comprising:

an elongate base member and a windshield mounting rail mounted thereto,

mounting rail" to consist of separate and distinct pieces and also whether the claim is limited to a base member that stretches so as to "encircle" the front of the boat deck. Each phrase will be addressed in turn.

The first disputed phrase is "[a] marine windshield mounting system for fitting a curved windshield to a boat deck of a boat, the mounting system comprising: an elongate base member and a windshield mounting rail mounted thereto." ('917 Patent col.8 ll.26-30). Defendants argue that this phrase excludes a single integral piece that includes both a base member and a windshield mounting rail. According to Defendants, the meaning of this phrase as used in the patent requires two separate and distinct pieces. (Doc. 217 at 9). Defendants' argument is well-taken.

"[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent." Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1341 (Fed. Cir. 2001). The term "mounted" is used in other claims in the '917 Patent to indicate separate pieces. For example, Claim 6

---

said base member longitudinally extending around the front of and mountable to the boat deck, said rail having a curvilinear windshield supporting flange, said supporting flange substantially planar in vertical cross section so as to conformably mate an exterior surface of said supporting flange to an inside surface of the windshield,

wherein said elongate base member and said supporting flange are cantilevered one from the other so as to form an acute angle therebetween, wherein when said base member is mounted onto the boat deck said supporting flange extends upwardly from said base member so that when said base member is mounted onto the boat deck, and said windshield is mounted onto said supporting flange, said base member and said windshield mounting rail are completely inboard of the windshield and not directly exposed outboard.

('917 Patent col.8 ll.26-46).

5

requires that "a base member is *mounted* to the boat deck." ('917 Patent col.6 ll.66-67 (emphasis added)).

More importantly, the specification in the '917 Patent describes the invention itself as using two separate interlocking extrusions. The specification states that "[t]he *invention* relates to a mounting system for marine windshields . . . and more specifically . . . to a hidden mounting system [that] utilizes an *interlocking pair of extrusions*, which are adjustable and *separable*." (Id. col.1 ll.6-9 (emphasis added)). The specification also states that in a cross-sectional view of "the base mounting system of *the present invention*, an elongated base member is shown *interlocked* with a windshield mounting rail." (Id. col.4 ll.49-51 (emphasis added)).

Importantly, even though "'particular embodiments and examples appearing in the specification will not generally be read into the claims,'" Comark Commc'ns, Inc., 156 F.3d at 1187, "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent." SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001); see also Honeywell Int'l, Inc. v. ITT Indus., Inc., 452 F.3d 1312, 1318 (Fed. Cir. 2006) (limiting the claimed invention where written descriptions referred to "this invention" or "the present invention"); Chimie v. PPG Indus., 402 F.3d 1371, 1379 (Fed. Cir. 2005) ("[W]hen the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment." (internal quotation and citation omitted)).

Plaintiff argues that the specification does not support reading Claim 23 as requiring two separate extrusions because the specification also contains a description

of the mounting system that does not identify the base member and windshield mounting rail as two physically distinct parts. The specification states that "the present invention . . . comprises briefly, an elongated base member, longitudinally extending along the front . . . and *including* a windshield mounting rail." ('917 Patent col.1 ll.61-66 (emphasis added)). Plaintiff suggests that the word "including" only requires "the presence of a windshield mounting rail in the system." (Doc. 241 at 25). Additionally, Plaintiff points out that the specification contains disclaimers that the preferred embodiment is only an "illustrative embodiment" and that other embodiments are possible. (Id.). Plaintiff thus argues that "Claim 23 is broad enough to cover a windshield mounting system wherein the base member and windshield mounting rail are included in a single piece." (Id.).

These arguments fail. Although the term "including" is by itself broad enough to allow for a single integral extrusion, that term should not be read in isolation. Reading "including" together with the intrinsic evidence referenced above makes clear that Claim 23 requires the base member and windshield mounting rail to consist of two separate pieces. And though the specification contains a general disclaimer that the preferred embodiment is illustrative and one of multiple possibilities, the preferred embodiment nonetheless expressly singles out the relevant description as describing "the present invention." ('917 Patent col.4 l.50). Furthermore, the section of the specification labeled "Technical Field" contains no such disclaimer and states that "*[t]he invention* relates to a mounting system for marine windshields . . . and more specifically . . . to a hidden mounting system [that] utilizes an *interlocking pair of extrusions*, which are adjustable and *separable*." (Id. col.1 ll.6-9).

7

Plaintiff also argues that construing Claim 23 as requiring two separate pieces would improperly read process limitations into an apparatus claim. Plaintiff is correct that "[c]ourts must generally take care to avoid reading process limitations into an apparatus claim." Baldwin Graphic Sys., Inc. v. Siebert, Inc., 512 F.3d 1338, 1344 (Fed. Cir. 2008). But Defendants' proposed construction does not depend on construing the windshield mounting system in Claim 23 as requiring the base member and windshield mounting rail to be manufactured using separate pieces. Rather, reading the claim and specification together makes clear that the base member and windshield mounting rail must consist of separate pieces *in the completed apparatus*.

The Court therefore construes Claim 23 as requiring the base member and windshield mounting rail to consist of two separate pieces as opposed to a single piece containing both elements.

Turning to the second disputed phrase in Claim 23, Defendants argue that the phrase "base member longitudinally extending around the front of . . . the boat deck" should be construed to require that the "base member stretches so as to *encircle* the front of the boat deck." (Doc. 217 at 15 (emphasis added)). Reading the phrase together with the specification, however, it is clear that the phrase does not have the narrow meaning that Defendants propose. The specification describes an embodiment with a base member "longitudinally extending *along* the front of . . . the vessel deck." ('917 Patent col.1 ll.63-65 (emphasis added)). This indicates that Claim 23 simply uses "around" as a synonym for "along." While Defendants point to a dictionary definition[2] of

---

[2] Defendants have also submitted the opinion of an expert to support their claim construction arguments. (Smith Decl., Doc. 220). The expert's opinion largely restates

8

"around" as meaning "so as to encircle or enclose," (Doc. 217 at 15 (quoting Merriam-Webster Dictionary (2004)), that same dictionary also defines "around" as meaning "in, *along*, or through a circuit," (id. (emphasis added)).

And, as Plaintiff argues, it also appears that Defendants' proposed construction would exclude the preferred embodiment. "A claim construction that excludes a preferred embodiment 'is rarely the correct interpretation; such an interpretation requires highly persuasive evidentiary support.'" Outside the Box Innovations, LLC v. Travel Caddy, Inc., 695 F.3d 1285, 1310 (Fed. Cir. 2012) (quoting Modine Mfg. Co. v. Int'l Trade Comm'n, 75 F.3d 1545, 1550 (Fed. Cir. 1996)). Referring to Figure 1, the preferred embodiment states that "[w]indshield 10 is shown in 3 sections where the center windshield section 16 is attached to a door 18, where door 18 allows access to the front seating area 20." ('917 Patent col.4 ll.38-40). Figure 1 is reproduced below:



Construing Claim 23 to mean that the "base member stretches so as to *encircle* the front of the boat deck" could suggest that the base member stretches continuously

---

the arguments Defendants made in their motion and is otherwise conclusory. See Phillips, 415 F.3d at 1318.

across the doorway; if so, then the door would not "allow access to the front seating area."

Accordingly, Claim 23 is not construed as requiring the base member to encircle the front of the boat deck. Instead, the Court construes "base member longitudinally extending *around* the front of . . . the boat deck" as synonymous with "base member longitudinally extending *along* the front of . . . the boat deck."

### B. Claims 1 and 19 of the '510 Patent

The '510 Patent generally describes a marine windshield frame and method of manufacture for windshields. ('510 Patent, Doc. 219-2). Defendants argue that Claims 1 and 19 of the '510 Patent are indefinite, and therefore invalid, because they cannot be construed to be consistent with the specification.

"In ruling on a claim of patent indefiniteness, a court must determine whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." Bancorp Servs., LLC v. Hartford Life Ins. Co., 359 F.3d 1367, 1371 (Fed. Cir. 2004). Because patents are presumed to be valid, "the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence." Young v. Lumenis, Inc., 492 F.3d 1336, 1344 (Fed. Cir. 2007). Also, "a claim is not indefinite merely because it poses a difficult issue of claim construction; if the claim is subject to construction, i.e., it is not insolubly ambiguous, it is not invalid for indefiniteness." Bancorp Servs., 359 F.3d at 1371. A claim is sufficiently clear to avoid invalidity on indefiniteness grounds "if the meaning of the claim is discernible, 'even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree.'" Id. (quoting Exxon Research & Eng'g Co. v. United

States, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Accordingly, "close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee." Exxon Research & Eng'g Co., 265 F.3d at 1380.

Claims 1 and 19 of the '510 Patent use the term "mates" to describe the location of the corner posts of the windshield frame in relation to the base rail. ('510 Patent col.6 l.26 & col.8 l.21). Both claims state that "said corner post[] bottom end mates with said base frame member rail." (Id. col.6 ll.25-26 & col.8 ll.20-21). The specification states that "as best viewed in FIG. 2, alternate windshield frame 110 includes a pair of vertically oriented corner posts 132a and 132b, where corner posts 132a and 132b mate with base frame rail 114 and top frame rail 124." (Id. col.4 ll.37-40). Figure 2 is reproduced below:



The specification also states "[a]s shown in FIG. 6 a partial perspective view of windshield frame 110 as viewed from just above the cockpit area 116, where right-hand

corner post 132a, mates with base frame rail 114, top frame rail 124 and alternate rearward top frame rail 130." (Id. col.4 ll.50-54).  Figure 6 is reproduced below:



Defendants argue that the term "mates" is indefinite because "mate" ordinarily means "connect or be connected mechanically"[3] and in Figures 2 and 6 the corner post bottom end "does not come into contact" with the "base frame member rail." (Doc. 217 at 18-19).  The Court disagrees.  Although Defendants imply that the figures must affirmatively show that the two pieces mate, the proper inquiry in determining whether the claim and specification are inconsistent is instead whether the figures show that the pieces do not mate.  In Figure 2, the front of the windshield obscures the relevant portions of the base frame member rail from view.  Figure 6 shows that the base frame member rail at least overlaps with the bottom portion of the corner post.  Neither figure shows that the corner post bottom end does not come into contact with the base frame member rail.  Furthermore, while Defendants cite a dictionary definition of "mate" that

---

[3] Defendants cite to the New Oxford American Dictionary 1078 (3d ed. 2004), which defines "mate" in part as "connect or be connected mechanically."

requires a mechanical connection, it is noted that dictionaries also define "mate" more broadly. See Webster's Third New International Dictionary 1392 (2002) (defining "mate" as "to put in close association: join closely together: couple"). In sum, Claims 1 and 19 of the '510 Patent are not indefinite.

Plaintiff in turn asks the Court to construe "mate" as meaning "align." (Doc. 241 at 20). Plaintiff suggests that the "terms 'mate' and 'align' are synonyms used interchangeably within the '510 Patent." (Id.). Plaintiff points out that claims 1 and 19 both state that "said corner post[] top end *aligns* to said top frame member rail," ('510 Patent col.6 ll.28-29 & col.8 ll.23-25 (emphasis added)), and that the specification states in relation to Figure 2 that "corner posts 132a and 132b *mate* with . . . top frame rail 124," (id. col.4 ll.39-40 (emphasis added)). Nonetheless, the specification is consistent with the plain and ordinary meaning of the claim terms. The Court therefore construes the disputed terms in Claims 1 and 19 as having their plain and ordinary meaning.

**C. '070 Patent**

The '070 Patent is a design patent titled "Marine Windshield" depicting multiple views of an ornamental marine windshield. ('070 Patent, Doc. 219-3). As shown in Figure 3, the design depicts the windshield as having four vent holes in the corner posts:



Defendants request a claim construction limiting the '070 Patent to a design with four vent holes, and they argue that the prosecution history supports such a construction.

As an initial matter, "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 679 (Fed. Cir. 2008). "In addition, in deciding whether to attempt a verbal description of the claimed design, the court should recognize the risks entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." Id. at 679-80. Nonetheless, "prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Phillips, 415 F.3d at 1317. "The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was

disclaimed during prosecution.'" Chimie, 402 F.3d at 1384 (quoting ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1580 (Fed. Cir. 1988)). Therefore, "where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1324 (Fed. Cir. 2003).

Defendants argue that the doctrine of prosecution disclaimer[4] limits the scope of the '070 Patent because the patentee disclaimed designs including fewer than four vent holes in response to a restriction requirement. The examiner in the application leading to the '070 Patent issued a restriction requirement pursuant to 35 U.S.C. § 121. (Doc. 219-13 at 4). Although the patentee's application for the '070 Patent included twelve different patent drawings, the examiner divided the drawings into five groups and required the patentee to select one group for prosecution. (Id.). The five groups consisted of (1) a marine windshield with a hatch and four circular vent holes, (2) a marine windshield with no hatch and either four circular vent holes or four square vent holes, (3) a marine windshield with a hatch and no vent holes, (4) a marine windshield with no hatch and no vent holes, and (5) a marine windshield with a hatch and either

---

[4] Plaintiff argues that Defendants improperly raised prosecution history estoppel during oral argument as another basis for limiting the '070 Patent to designs with four vent holes (Doc. 265 at 2). According to Plaintiff, Defendants waived that defense by failing to plead it. It is not clear from Defendants' Post-Hearing Brief whether they intend to assert prosecution history estoppel in support of their claim construction arguments. In any event, prosecution history estoppel does not apply to claim construction, so the Court need not resolve Plaintiff's waiver argument at this time. See generally Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1578 (Fed. Cir. 1995); see also AccuScan, Inc. v. Xerox Corp., 76 F. App'x 290, 291 (Fed. Cir. 2003) (unpublished) (noting that "prosecution history estoppel does not apply to claim construction").

15

two oblong vent holes or two rectangular vent holes. (Id.). The patentee elected to prosecute the first group—a marine windshield with a hatch and four circular vent holes. (Doc. 219-12 at 35).

Defendants argue that this election constituted a disavowal of the unelected designs and that the claim must therefore be limited to a design with four vent holes. Plaintiff in turn argues that an election pursuant to a restriction requirement does not constitute an unequivocal disavowal of the unelected embodiments because restriction requirements are "purely administrative in nature" and "not related to patentability." (Doc. 241 at 10). The Court need not reach this question to resolve the claim construction issue here.

Even if the election constituted an unequivocal disavowal of the unelected designs, it would not imply an unequivocal disavowal of all designs that do not have four vent holes. Defendants' characterization of the election as a choice between designs with four vent holes and designs without four vent holes places "undue emphasis on particular features of the design[s] . . . rather than on the design[s] as a whole." Egyptian Goddess, Inc., 543 F.3d at 679-80. Adopting the Defendants' proposed construction would ignore that the vent holes in the unelected designs differ not merely in number but also in shape and relative size. Disavowing the unelected windshield designs therefore would not itself constitute an unequivocal disavowal of windshield designs without four vent holes.

Defendants also argue that the prior art considered by the examiner during prosecution supports their construction. The examiner allowed the '070 Patent over a prior art reference—U.S. Patent No. 4,970,946 ("the '946 Patent")—that depicted a

16

windshield design with three vent holes. Defendants claim that because the '946 Patent is otherwise "substantially similar in overall design" to the '070 Patent, the '070 Patent must be read to exclude designs with three vent holes. (Doc. 217 at 26).

This argument fails. Once again, Defendants are asking the Court to ignore differences beyond the number of vent holes. Unlike the windshield design in the '070 Patent, the windshield design in the '946 Patent has rectangular vent holes, no visible curvature, and a prominent frame visible from the front. ('946 Patent, Doc. 219-16). The Court therefore cannot conclude that the examiner's consideration of the prior art in the '946 Patent limited the scope of the '070 Patent to four vent holes instead of three.

## IV. Conclusion

In accordance with the foregoing, it is hereby **ORDERED** and **ADJUDGED** that Defendants' Motion for Claim Construction (Doc. 217) is **GRANTED** in part and **DENIED** in part as set forth herein.

**DONE** and **ORDERED** in Orlando, Florida on December 19, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record