UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PACIFIC COAST MARINE
WINDSHIELDS LIMITED,

                    Plaintiff,

v.                                                    Case No:  6:12-cv-33-Orl-28DAB

MALIBU BOATS, LLC, MARINE
HARDWARE, INC., TRESSMARK, INC.,
MH WINDOWS, LLC, and JOHN F.
PUGH,

                    Defendants.

_____

## ORDER

This case involves a dispute as to the origin of the design of a boat windshield for which the U.S. Patent and Trademark Office issued Patent Number D555,070 ("the '070 Patent") to Darren Bach, the owner of Plaintiff, Pacific Coast Marine Windshields Limited. As its name suggests, Pacific is in the business of manufacturing windshields for boats. Alleging infringement of the '070 Patent,[1] Pacific sues Defendants Malibu Boats, LLC; Marine Hardware, Inc.; Tressmark, Inc.; MH Windows, LLC; and John F. Pugh.   In its counterclaims, Malibu asserts conversion of the '070 Patent, unlawful business practices based on the '070 Patent, and entitlement to declaratory judgment as to non-infringement

---

[1] Pacific also alleges copyright infringement and trade secret misappropriation. (Joint Notice, Doc. 415, at 2).  There has been some confusion regarding what claims remain at issue because this case has had three case numbers due to consolidation and transfer and because several complaints have been filed.  (Case No. 6:10-cv-1285, Case No. 6:11-cv-133, and Case No. 6:12-cv-33).  Unless otherwise noted, citations to the record will be to Case No. 6:12-cv-33.  Pacific originally alleged several other causes of action, including causes of action based on other patents, but the parties have notified the Court that the claims listed in this Order are Pacific's only remaining claims.  (Doc. 415 at 2).

and invalidity of the '070 Patent.[2]   The parties filed cross-motions for summary judgment. (Defs.' Consolidated Mot. Partial Summ. J., Doc. 211; Pl.'s Mot. Summ. J., Doc. 176).  This Order addresses only the issues of patent inventorship, Malibu's claim of shop right as a defense, and Malibu's argument that damages awarded to Pacific should be limited to the profits of the windshield.  Because there is a genuine dispute of material fact regarding the claims of inventorship, Defendants' motion for summary judgment on Pacific's claim of patent infringement and Pacific's motion for summary judgment on Malibu's patent-related claims must be denied.  Also, under the facts as alleged, the shop right defense does not extend to Malibu, and Defendants' motion for summary judgment on that basis must also be denied.  Finally, because Defendants' reading of the damages statute is inconsistent with the statutory text and purpose, Defendants' motion for summary judgment on the issue of damages must be denied.

## I.   Factual Background

In the past, Pacific supplied Malibu with at least two types of windshields used in the manufacture of Malibu's boats.  In 2005, Darren Bach, Chief Executive Officer and owner of Pacific, (Bach Decl., Doc. 177, ¶ 1),[3] discussed with Malibu employees the possibility of a new windshield design.  Development of the design proceeded and eventually included a tapered corner post, a hidden top rail, and four vent holes.  (See id.

---

[2] Defendant Tressmark also filed counterclaims, (see Answer & Countercls., Doc. 79), but the parties agree that Malibu's counterclaims are the only claims of Defendants remaining, (Doc. 415 at 2-3).  Malibu also has a currently pending claim for breach of contract; that claim is not addressed in this Order.  (Id. at 2).  Malibu originally filed claims based on other patents, (see Answer & Countercls., Docs. 45 & 80), but the parties have advised the Court that only claims involving the '070 Patent remain, (Doc. 415 at 2-3).

[3] Citations to depositions and declarations are indicated by "[Last Name] Dep." or "[Last Name] Decl."  Deposition page numbers refer to the individual page of the deposition transcript, not the page of the document on the docket.

¶ 4; '070 Patent, Doc. 69, at 34-38; <u>see also</u> Gasper Decl., Doc. 207, ¶ 5). Bach applied for a design patent, and on November 13, 2007, the '070 Patent was issued designating Bach as the sole inventor. (Doc. 69 at 34-38).

Bach states that he conceived of the idea for the new boat windshield on his own and initially drew the details of his idea on the back of a poster in his house in the middle of the night in February 2005. (Bach Decl., Doc. 177, ¶¶ 3-4; Ex. 1(a) to Bach Decl., Doc. 177-1). Bach claims that he made more sketches of his idea between February and September 2005. (<u>Id.</u> ¶ 5; Exs. 2(a)-2(g) to Bach Decl., Doc. 177-2). Many of these sketches were dated after Bach completed them because it was policy at Pacific for office workers to periodically copy and date Bach's drawings and return them to his desk. (Bach Decl., Doc. 177, ¶ 7; Gourlay Decl., Doc. 178, ¶ 3; Collantes Decl., Doc. 179, ¶ 3). Bach also attests that by September 2005 he was working with another Pacific employee to develop computer assisted drawings of his design. (Bach Decl., Doc. 177, ¶ 6; Ex. 3 to Bach Decl., Doc. 177-3). The electronic documents indicate that the same Pacific employee was working on these computer assisted drawings in May 2005.[4] (Collantes Decl., Doc. 179, ¶ 5; Exs. D & E to Collantes Decl., Doc. 179-1, at 7-10).

On September 27, 2005, Bach joined Dan Gasper, the Manager of Research and Development for Malibu, on a car ride to Parker, Arizona. (Bach Dep., Doc. 212-12, at 99;

---

[4] Malibu cites authority for the proposition that time stamps on electronic evidence are insufficient to prove a conception date earlier than recognized by the patent. (Doc. 211 at 14 (citing <u>Kenexa Brassring, Inc. v. Taleo Corp.</u>, 751 F. Supp. 2d 735, 760-61 (D. Del. 2010)). Time stamps on electronic documents may not be the most reliable evidence, but the electronic documents and their time stamps can still be considered. <u>See Kenexa</u>, 751 F. Supp. 2d at 760 ("[A timestamped source code] is evidence, but it is not independent evidence [to provide sufficient corroboration of an earlier conception date.]").

Bach Decl., Doc. 177, ¶¶ 9-10; see also Gasper Decl., Doc. 207, ¶¶ 3, 5). Along the way, Bach showed Gasper his ideas for a new windshield design for Malibu boats. (Gasper Decl., Doc. 207, ¶ 5). Bach testified that Gasper liked one drawing in particular. (Bach Dep., Doc. 212-12, at 110 ("[Gasper] said [regarding a particular design], 'that is exactly what I want.'")). According to Bach, Gasper was excited about Bach's ideas and stated that the design concepts would be used "as a basis for a new windshield for Malibu" and that the staff at Malibu would determine whether the vent holes should remain on the design. (See id. at 118).

Defendants dispute Bach's inventorship. Gasper maintains that he was the first to conceive of the corner post windshield, the hidden top rail, and other elements of the design patent. (Gasper Decl., Doc. 207, ¶ 12). According to Gasper, he came up with the idea for an automotive-style corner post after seeing a windshield on a concept car at a car show in November 2004. (Id. ¶ 4). Gasper maintains that he, not Bach, proposed the idea of an automotive-style corner post, and he states that Bach was "receptive to this idea." (Id. ¶ 6). Gasper also contends that he did not like any of the ideas suggested by Bach on the car ride. (Id. ¶ 5). As evidence of these contentions, Defendants submitted a picture of the concept car on which Gasper allegedly based his idea, (Ex. 1 to Gasper Decl., Doc. 207-1, at 2; Gasper Decl., Doc. 207, ¶ 7), and an email exchange between Gasper and Bach in which Gasper attached computer assisted drawings that he maintains are substantially similar to the design in the '070 Patent, (see Ex. 3 to Gasper Decl., Doc. 207-3; Gasper Decl., Doc. 207, ¶ 8).[5]

_____

[5] Defendants and Gasper rely on other drawings in support of their argument that Gasper is a co-inventor, but many of the images cannot be considered by this Court due to the magistrate judge's sanctions order against Malibu. (Doc. 309; see also Doc. 398).

In addition to disputing with whom the corner-post idea originated, the parties also dispute how similar Bach's drawings are to the final patented design. (See, e.g., Bach Dep., Doc. 212-12, at 106-07; Bach Decl., Doc. 177, ¶ 10; Gasper Decl., Doc. 207, ¶ 5). Bach acknowledges that none of the drawings he showed Gasper were identical to the patented design, though he argues that one of the drawings was very similar. (Bach Dep., Doc. 212-12, at 119-20). In fact, Gasper testified that he thought he should be listed as an inventor on the eventual design patent but did not tell Bach his thoughts in that regard because he assumed Bach knew those thoughts. (Gasper Dep., Doc. 180-2, at 145-46). Indeed, according to one witness, Bach stated on March 20, 2008, that Gasper could have been considered an inventor of the windshield, although it is unclear whether Bach was referring to the design patent specifically. (Broy Dep., Doc. 209-3, at 32-35 ("Darren [Bach] basically said . . . 'Yeah, I'm just the one smart enough to do the patent and put my name on it.'")). Bach also stated in an email to Gasper on January 30, 2006, that both men would "probably have to appear as inventors." (Bach Email, Doc. 212-13, at 2).

Bach eventually obtained the '070 Patent and was listed as the sole inventor. (Doc. 69 at 34). The '070 Patent was for "[t]he ornamental design for a marine windshield." (Id.). Malibu used the '070 windshield for a particular boat model and paid Pacific for each

---

Gasper can rely on the image and emails mentioned in the text of this Order because they were excluded from the sanctions order. (Doc. 398 at 2).

Pacific argues that these drawings cannot be considered because they were not submitted with Malibu's answers to interrogatories. (Reply, Doc. 215, at 6). The Federal Rules of Civil Procedure provide that a party who fails to disclose information in response to a discovery request "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Any failure of Malibu to disclose this drawing was harmless. Pacific had sufficient notice of this drawing because it was sent to Bach directly, and they were able to reply to Malibu's use of the document. (Doc. 215 at 6-7).

windshield it installed.   By August 2007, however, the relationship between the two companies had soured.  (See Alkema Email, Doc. 177-10).  Malibu complained of defective windshields purchased from Pacific and eventually retained another company, Defendant Marine Hardware, Inc., to supply the patented windshield.  (Gasper Decl., Doc. 207, ¶ 10; Alkema Dep., Doc. 146-1, at 108-10).

## II.   Procedural History

In 2010, Pacific sued Malibu, Marine Hardware, MH Windows, John F. Pugh, and Tressmark, claiming patent infringement, copyright infringement, and trade secret misappropriation.  (Case No. 6:10-cv-1285, Am. Compl., Doc. 37; see also Second Am. Compl., Doc. 69).  Malibu brought counterclaims for conversion of the '070 Patent, unlawful business practices under California law related to the '070 Patent, and breach of contract, and it requested a declaratory judgment regarding non-infringement and invalidity of the '070 Patent.[6]  (Answer & Countercls., Doc. 80; see also Case No. 6:10-cv-1285, Answer & Countercls., Doc. 45).  Pacific and Defendants filed motions for summary judgment.  (Docs. 176 & 211).   The Court previously granted Defendants' motion based on prosecution history estoppel only with respect to non-infringement of the '070 Patent.  (Doc. 325 at 9). However, the United States Court of Appeals for the Federal Circuit reversed that grant of summary judgment, holding that Pacific's infringement claim was not barred by principles of prosecution history estoppel.  (J. & Op., Doc. 354, at 17-18; Mandate, Doc. 355).   The Federal Circuit remanded the case for further proceedings, including disposition of the remaining issues in the parties' motions for summary judgment.

---

[6] Additional claims were brought by Pacific, Malibu, and Tressmark, but the claims mentioned in the text are the only remaining claims in this case.  (Doc. 415; see supra footnotes 1 & 2).

In their motion, Defendants argue that Gasper contributed to the design and that Bach's patent is thus invalid. (Doc. 211). Defendants also argue that Malibu had an implied license in the form of a shop right to use the design and thus could not infringe the patent and that damages should be limited to the profits from the sale of the windshields, not the sale of the boats. (Id.). Pacific, on the other hand, contends in its motion for summary judgment that Bach was the sole inventor of the '070 Patent and that thus Defendants' claims of rights to the patent must fail.[7]  (Doc. 176).

### III.   Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In other words, "'summary judgment may be granted when no reasonable jury could return a verdict for the nonmoving party.'" Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1472 (Fed. Cir. 1997) (quoting O.I. Corp. v. Tekmar Co., 115 F.3d 1576, 1580 (Fed. Cir. 1997)).  The moving party bears the burden of demonstrating that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). That burden "may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

In ruling on a motion for summary judgment, a court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, and it may not weigh evidence or determine credibility. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element

---

[7] In their motions, the parties make additional arguments relating to copyright infringement and breach of contract. These arguments will be addressed in a later Order.

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). "'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the [factfinder] or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). Summary judgment can be granted in a patent case if the standards set forth in Federal Rule of Civil Procedure 56 are satisfied. Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994).

IV.    Analysis

A.    Inventorship of the '070 Patent

Defendants challenge the validity of the '070 Patent on the ground that Gasper is a co-inventor. Federal law provides that "[a] person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f)

(2006)[8]; see also 35 U.S.C. § 116(a) ("When an invention is made by two or more persons jointly, they shall apply for patent jointly . . . ."). If a patent application does not accurately list joint inventors, the patent is invalid. See Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 412 F.3d 1331, 1338 (Fed. Cir. 2005). Inventorship is an issue of law. Nartron Corp. v. Schukra U.S.A. Inc., 558 F.3d 1352, 1356 (Fed. Cir. 2009). However, inventorship incorporates underlying factual issues. Checkpoint, 412 F.3d at 1338; see also Fina Oil, 123 F.3d at 1473 ("The determination of whether a person is a joint inventor is fact specific, and no bright-line standard will suffice in every case."). If, in view of the evidence submitted by the parties, there is a genuine issue of material fact on the issue of joint inventorship, summary judgment should not be granted. Checkpoint, 412 F.3d at 1338 (reversing summary judgment when there was "flatly contradictory evidence relating to the matter critical for determining whether the . . . patent is invalid"); see also Fina Oil, 123 F.3d at 1474.

"[I]nventorship is a question of who actually invented the subject matter claimed in a patent." Sewall v. Walters, 21 F.3d 411, 417 (Fed. Cir. 1994) (alteration in original) (quotation omitted). "Conception is the touchstone of inventorship, the completion of the mental part of invention." Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). "Conception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." Id. at 1228. "[T]he test for

---

[8] This statute has since been amended to remove subsection (f), but the amendments apply only to patents with an effective filing date on or after March 16, 2013. Leahy-Smith America Invents Act, Pub. L. No. 112-29, sec. 3, 125 Stat. 284 (2011). Therefore, the previous version of this statute applies in this case.

conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention; the inventor must prove his conception by corroborating evidence, preferably by showing a contemporaneous disclosure." Id. A design patent can be obtained by "[w]hoever invents any new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171. The standard of inventorship is the same for both design patents and utility patents. Hoop v. Hoop, 279 F.3d 1004, 1007 (Fed. Cir. 2002).

If two or more people collaborate on an invention, it is considered a joint invention. Burroughs, 40 F.3d at 1227. For an invention to be considered joint, "the qualitative contribution of each collaborator is key—each inventor must contribute to the joint arrival at a definite and permanent idea of the invention as it will be used in practice." Id. at 1229. "'[T]o be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention.'" Caterpillar Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1377 (Fed. Cir. 2004) (alteration in original) (quoting Fina Oil, 123 F.3d at 1473). "The basic exercise of the normal skill expected of one skilled in the art, without an inventive act, . . . does not make one a joint inventor." Fina Oil, 123 F.3d at 1473.

The issuance of a patent carries the presumption of validity. Procter & Gamble Co. v. Teva Pharm. USA, Inc., 566 F.3d 989, 994 (Fed. Cir. 2009). Thus, in examining an issued patent, it is presumed that the only actual inventors are those named in the patent. Caterpillar, 387 F.3d at 1377; Fina Oil, 123 F.3d at 1472. To render a patent invalid, nonjoinder of an actual inventor must be proved by clear and convincing evidence. Pannu

v. Iolab Corp., 155 F.3d 1344, 1349 (Fed. Cir. 1998); Caterpillar, 387 F.3d at 1377 ("To rebut this presumption, a district court must find clear and convincing evidence that the alleged unnamed inventor was in fact a co-inventor . . . ."). "Clear and convincing evidence places in the fact finder 'an abiding conviction that the truth of [the] factual contentions are highly probable.'" Procter & Gamble, 566 F.3d at 994 (alteration in original) (quoting Colorado v. New Mexico, 467 U.S. 310, 316 (1984)).

To meet the burden of clear and convincing evidence, "an alleged co-inventor must supply evidence to corroborate his or her testimony." Caterpillar, 387 F.3d at 1377. "'The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony.'" Checkpoint, 412 F.3d at 1339 (quoting Finnigan Corp. v. United States Int'l Trade Comm'n, 180 F.3d 1354, 1366 (Fed. Cir. 1999)). Corroborative evidence can consist of "[p]hysical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the alleged inventor or an interested party." Id. However, "[r]eliable evidence of corroboration preferably comes in the form of records made contemporaneously with the inventive process." Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1327 (Fed. Cir. 2004). The evidence of corroboration is subject to a rule of reason analysis, which requires an "'evaluation of all pertinent evidence [to] be made so that a sound determination of the credibility of the inventor's story may be reached.'" Id. (quoting Price v. Symsek, 988 F.2d 1187, 1195 (Fed. Cir. 1993)).

For an inventor to prove an earlier invention date than the filing date of the patent, that inventor must also provide corroborating evidence. See Procter & Gamble, 566 F.3d at 999. However, as noted above, issued patents carry a presumption of validity, and

inventors named on issued patents generally do not need to prove an earlier conception date.  Therefore, an inventor listed on a patent need only prove an earlier invention date if a party challenging the patent successfully rebuts the presumption of validity through clear and convincing evidence.

Defendants argue that the Court should grant summary judgment in its favor on Pacific's patent infringement claim because the '070 Patent omits Gasper as a co-inventor and thus should be declared invalid.[9] (Doc. 211 at 8).  Defendants assert that because they presented testimony and contemporaneous corroborating evidence that Mr. Gasper did substantial work on the corner post windshield design no later than November 2005— prior to the filing date of the patent—Pacific must proffer corroborated and reliable evidence to support a finding that Bach conceived of the design prior to November 2005.  (Id. at 9).  Pacific, on the other hand, contends that Defendants failed to prove by clear and convincing evidence that Gasper made an inventive contribution to the '070 Patent.  (Doc. 253 at 11).  Pacific also argues that it is entitled to summary judgment on Malibu's counterclaims involving the '070 Patent because Mr. Gasper is not a co-inventor of the design patent.  (Doc. 176 at 14-15).

Both sides moved for summary judgment on this issue, and this Court must construe the facts for each motion in the light most favorable to the nonmovant.  The facts alleged by each party, if believed at trial, could lead to a verdict for that party.  There is contradictory

---

[9] Malibu also argues that Neil Gilbert, a contractor for Malibu, contributed to the '070 Patent.  (Doc. 211 at 8).  As a result of a previous sanctions order, (Doc. 309), however, Malibu is unable to rely on Gilbert's deposition testimony or documents at summary judgment or at trial.  Accordingly, this Court has only considered Gasper's alleged contribution to the '070 Patent.

evidence relating to inventorship, and the facts that underlie the issue of inventorship must be decided at trial. Summary judgment is thus improper.

Specifically, Defendants' motion must be denied because Defendants have not shown that there are no genuine issues of material fact regarding whether Gasper should have been listed as a joint inventor on the '070 Patent. Bach submitted evidence that he conceived of the windshield on his own and testified that Gasper wanted to implement Bach's design for Malibu boats. Gasper, on the other hand, attested that he conceived of several aspects of the patented windshield and submitted evidence that he assisted in developing a picture with a similar design and that Bach stated that Gasper should be listed as an inventor. Whether Gasper contributed in a significant way "to the joint arrival at a definite and permanent idea of the invention as it will be used in practice," see Burroughs, 40 F.3d at 1229, or whether he instead conducted a "basic exercise of the normal skill expected of one skilled in the art, without an inventive act," Fina Oil, 123 F.3d at 1473, is a disputed issue of fact, and summary judgment is thus unwarranted, see Checkpoint, 412 F.3d at 1338 (holding that summary judgment was improper when there was "flatly contradictory evidence relating to the matter critical for determining whether the . . . patent is invalid under 35 U.S.C. § 102(f)"); see also Pannu, 155 F.3d at 1351. Similarly, Pacific's motion for summary judgment regarding inventorship of the '070 Patent must be denied because there are genuine issues of material fact as to inventorship.

Even if Defendants had presented clear and convincing evidence that Gasper made a significant contribution to the conception of the invention by November 2005, a disputed issue of fact would remain as to whether Pacific established an earlier conception date. Pacific submitted Bach's earlier drawings of the windshield, and Defendants contest the

accuracy of the dates on the drawings and the similarity of the drawings to the patented design.  Whether Bach had conceived of the design before November 2005 is a disputed issue of material fact that cannot be resolved on summary judgment.  Accordingly, the parties' motions for summary judgment must be denied insofar as they seek summary judgment on the basis of inventorship.

### B.    Shop Right Privilege

Malibu maintains that even if trial is required regarding its co-inventorship defense under 35 U.S.C. § 102(f), it is entitled to a judgment of no liability under the shop right doctrine.  (Doc. 211 at 16; Doc. 263 at 6-9).  Shop right is an affirmative defense to a patent infringement claim and is founded on common law principles of implied license and equitable estoppel.  The doctrine recognizes the right of an employer to use an invention patented by an employee without liability for infringement.  In its response (Doc. 253), Pacific argues that Defendants' motion for summary judgment on this issue should be denied for two reasons: (1) that Malibu waived the shop right defense by failing to plead it, and (2) that the scope of the defense does not extend to Malibu.  Pacific's latter argument has merit.

### 1.    Waiver

Pacific's argument that Malibu waived a shop right defense is foreclosed by Eleventh Circuit precedent.  Under the Federal Rules of Civil Procedure, a party must state any affirmative defense, including license, in responding to a pleading.  See Fed. R. Civ. P. 8(c).  However, the purpose of Rule 8 is to give notice to the opposing party, and "if a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the [opposing party] any prejudice."  Grant v. Preferred Research, Inc., 885 F.2d 795, 797 (11th Cir. 1989)

(quotation omitted).  For this reason, trial courts can resolve affirmative defenses on the merits when they are raised for the first time in summary judgment upon a finding of no prejudice.  Id. at 797-98.

There is no question that Pacific was on notice of Malibu's claim of the shop right defense.  It had notice of an alleged implied license through Malibu's Answer to the Amended Complaint, (Doc. 45 at 7-8); through Defendant Marine Hardware, Inc.'s Answer to the Second Amended Complaint, (Doc. 78 at 7); and through Malibu's motion for summary judgment, which was filed on July 20, 2012.  Pacific has had ample time to respond to the defense and has raised no specific allegations of prejudice.  (Doc. 253 at 12-13).  Accordingly, Malibu did not waive a shop right affirmative defense.

> 2.    *Scope of the Shop Right Doctrine*

Pacific's argument that the scope of the shop right defense does not extend to Malibu is based on its relationship with Malibu and how the patented windshield was used by Malibu.  Pacific argues that Malibu failed to show that Bach and Malibu had an employer-employee relationship or another contractual relationship, that Malibu did not participate in the design of the windshield until after Bach had a complete conception of the patented design, and that a shop right would only allow Malibu to "use" the patented invention, not to sell it.  (Doc. 253 at 13-14).  Malibu responds that an employer-employee relationship is not necessary to prove a shop right, that assistance after the conception of the invention could constitute sufficient assistance to confer a shop right, and that Malibu's only use of the boat windshields is to sell them, which it can do under the shop right doctrine.  (Doc. 263 at 7-9).

Under the shop right rule, "where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention

for which he obtains a patent, he must accord his master a nonexclusive right to practice the invention." United States v. Dubilier Condenser Corp., 289 U.S. 178, 188 (1933). "A 'shop right' is generally accepted as being a right that is created at common law, when the circumstances demand it, under principles of equity and fairness, entitling an employer to use without charge an invention patented by one or more of its employees without liability for infringement." McElmurry v. Ark. Power & Light Co., 995 F.2d 1576, 1580 (Fed. Cir. 1993).[10] Courts have based the shop right doctrine on principles of estoppel and implied license. Id. at 1581; Beriont v. GTE Labs., Inc., 535 F. App'x 919, 923 (Fed. Cir. 2013).

Despite language from some cases indicating that shop right applies to employers and employees, the doctrine is not necessarily limited to that relationship and can encompass consultants and contractors. See McElmurry, 995 F.2d at 1583 n.15; see also Francklyn v. Guilford Packing Co., 695 F.2d 1158, 1160-61 (9th Cir. 1983). In determining whether a defendant is entitled to a shop right, courts consider a variety of factors. McElmurry, 995 F.2d at 1581-82 ("[T]he proper methodology for determining whether an employer has acquired a 'shop right' in a patented invention is to look to the totality of the circumstances on a case by case basis and determine whether the facts of a particular case demand, under the principles of equity and fairness, a finding that a 'shop right' exists."). One factor that courts consider is whether the inventor asserted a right to

---

[10] The parties agree that the law of California applies to the issue of shop right. (Applicable Law for the Shop Right Defense, Doc. 418). Malibu argues that "this Court should look to federal cases because California courts hold that federal law dictates what constitutes a valid 'shop right.'" (Id. at 2). Pacific, on the other hand, urges that federal cases that do not apply California law are irrelevant and that California law applies shop right only to an employer-employee relationship. (Id. at 2-3 (citing Aero Bolt & Screw Co. of Cal. v. Iaia, 180 Cal. App. 2d 728, 736-37)). To the extent that the law of California applies, any limitation of the shop right doctrine to an employer-employee relationship is not inconsistent with the result of this Order.

compensation for the use of the invention at any point or whether the inventor otherwise consented to the invention's use by the defendant. Id. at 1583. Courts should also consider whether the inventor used the defendant's money, time, facilities, or materials to develop the invention. See id. at 1582; Dubilier, 289 U.S. at 188-89.

Courts have found difficulty in defining the precise scope of the shop right doctrine. Beriont, 535 F. App'x at 923 ("[T]he law regarding the doctrine's scope is far from clear."). Courts agree that a company is entitled to a shop right for the "use" of the patented invention in its business. See, e.g., McElmurry, 995 F.2d at 1583. That "use" is generally seen as "'co-extensive with the business rights of the employer.'" Id. (quoting Pure Oil Co. v. Hyman, 95 F.2d 22, 25 (7th Cir. 1938)). Scope of the right is "determined from the nature of the employer's business, the character of the invention involved, the circumstances which created it and the relation, conduct, and intention of the parties." Flannery Bolt Co. v. Flannery, 86 F.2d 43, 44 (3d Cir. 1936).

The shop right doctrine does have limits. "[I]t seems an employer can only use the invention internally in its own business." Beriont, 535 F. App'x at 923. Companies with the shop right privilege have been entitled to enlist third parties to duplicate the invention for the company's use in its business. McElmurry, 995 F.2d at 1583-84. Many cases granting shop right involve processes that companies only use internally. See, e.g., id. at 1578-80; Wommack v. Durham Pecan Co., 715 F.2d 962, 964-65 (5th Cir. 1983); Francklyn, 695 F.2d at 1159-60. There are a few non-binding cases, however, allowing a company's "use" to extend to its sale of an invention. Flannery Bolt, 86 F.2d at 44 (stating that shop right applied with respect to selling the invention because "[t]he business of the plaintiff is the manufacturing of [the invention] for sale"); Withington-Cooley Mfg. Co. v. Kinney, 68 F.

500, 507 (6th Cir. 1895) ("[T]he license to be presumed, on the facts we have stated, was not limited by the mere life of the patterns, but was intended as an authority to make and sell power presses embodying [the inventor]'s improvement so long as [the employer] should continue in business, and during the life of the patent."). The Federal Circuit has noted, however, that "[it] is, at least, likely (if not certain) that the doctrine does not extend to an employer's sale of the patented invention to an unrelated third-party for the latter's unfettered use, since the 'shop right' belongs only to the employer." Beriont, 535 F. App'x at 923. Accordingly, the sale of a particular invention constitutes use of the invention outside a company's own business and "may implicate activity by [the company] that is outside the scope of its shop rights." Id. at 924. This is a different situation than that contemplated in McElmurry, in which a company hired a third party to use the invention in-house. Id.

There is some evidence indicating that Malibu contributed some time and money to the design of the windshield at issue. (See Ex. NN to Berliner Decl., Doc. 212-40, at 2 (an email from Bach to Gasper stating that Bach had "tooling charges" assembled for Gasper's approval regarding the corner post windshield development)). Pacific clearly sought Malibu's approval on any modifications to the final design. (See id. ("We have had to make some minor changes in the hole positioning in order to allow for the vent operation. I will need your OK on this."); see also Bell Dep., Doc. 212-20, at 30 ("[T]here was a review of the design process and what we were developing mainly between Darren [Bach] and Malibu.")).

Notwithstanding this evidence, an analysis of the factors involved indicates that Malibu is not entitled to the shop right defense. Pacific and Bach did not allow Malibu to

utilize the invention without compensation—Malibu paid for each windshield.  Furthermore, it is unclear whether Bach can even be considered a consultant of Malibu.  The evidence instead indicates that Malibu was a customer of Pacific, and Pacific was merely designing a particular product with a customer in mind.  Malibu has cited no authority indicating that this type of relationship can support a shop right defense.

Even if Malibu is factually entitled to some protection under the shop right doctrine, Malibu exceeded the scope of the shop right by enlisting a third party to manufacture the patented windshields and sell them to the public.  As stated above, nearly all of the cases cited by Malibu apply the shop right doctrine to inventions used internally within a company.  The shop right doctrine grants limited protection from suit; it does not grant all of the rights of a patent owner.  Thus, Malibu exceeded the scope of the shop right doctrine.  For these reasons, Malibu is not entitled to summary judgment based on this doctrine.

C.   Damages

Finally, the parties dispute how damages should be measured if Malibu is found to have infringed the '070 Patent.  Pacific argues that it should be allowed to recover profits generated from the sale of Malibu boats to which the accused windshields were attached.  (Doc. 253 at 19-27).  Malibu, on the other hand, contends that Pacific's recovery is limited to Malibu's profit from the sale of the windshields.  (Doc. 211 at 22-29).  Resolution of this dispute turns on the construction of 35 U.S.C. § 289.

Section 289 allows design patentees to recover an infringer's profits when the infringer has applied the patented design to "any article of manufacture for the purpose of sale."  The statute provides in part:

> Whoever . . . sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit . . . .

19

35 U.S.C. § 289.  The parties' disagreement centers on the interpretation of the phrase "any article of manufacture."  Pacific contends that this description includes Malibu boats constructed using the patented windshield, while Malibu maintains that the definition of "article of manufacture" under the facts of this case is limited to the '070 windshield.  A plain reading of the statute favors Pacific, as does authority from the Federal Circuit.

Historically, design patentees were required to prove what portion of an infringer's profit was due to the patented design; this requirement was referred to as "apportionment." See Nike, Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1441 (Fed. Cir. 1998). "Apportionment presented particularly difficult problems of proof for design patentees . . . ."  Id.  Congress removed the apportionment requirement in 1887, with the enactment of what later became § 289.  Id. at 1441-42.  Design patent owners are no longer required "to apportion the infringer's profits between the patented design and the article bearing the design."  Id. at 1442.  The intent of Congress to allow more expansive recovery for design patent owners is exhibited in the plain language of the statute, which allows recovery of "total profit" from anyone who sells "any article of manufacture to which such design or colorable imitation has been applied."  35 U.S.C. § 289.  In this case, Malibu sells boats, to which patented windshields have been applied.  The plain language and intent of the statute support a conclusion that Pacific is entitled to Malibu's profits from the sale of its boats with the windshield.

This reading of § 289 is further supported by Federal Circuit and district court decisions.  In Nike, the Federal Circuit referred to the damages as profits from "the infringing shoes" when the patent involved only part of the shoe.  138 F.3d at 1447.  In Apple, Inc. v. Samsung Electronics Co., the plaintiff had several patents pertaining to

smartphones and tablet computers that claimed a portion of the design of particular electronic devices but disclaimed other portions.  678 F.3d 1314, 1317 (Fed. Cir. 2012). With respect to damages based on the defendant's profits, the district court ruled that the plaintiff was not required to prove which portions of the profits were earned by the design feature. Apple, Inc. v. Samsung Elecs. Co., 926 F. Supp. 2d 1100, 1111 (N.D. Cal. 2013). "Congress specifically drafted the design patent remedy provisions to remove an apportionment requirement that the Supreme Court had imposed.  Thus, there is simply no apportionment requirement for infringer's profits in design patent infringement under § 289." Id.; see also Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd., No. 96 CIV. 2717(DLC), 1997 WL 83395, at *6 (S.D.N.Y. Feb. 27, 1997) ("If a jury should determine that [the defendant] is liable . . . [the plaintiff] is entitled to all of [the defendant's] profits from any infringing sales of shoes with [the patented] sole."), reconsidered on other grounds, 1997 WL 232316 (May 7, 1997).

Defendants contend that elsewhere in the patent statutes, the term "article of manufacture" refers to the item in the design patent.  35 U.S.C. § 171 ("Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor . . . ."). Defendants argue that for this reason, "article of manufacture" in this case must mean only the windshield, not the entire boat.  However, Defendants read in a definition of "article of manufacture" that is not contained in the statute.  Additionally, in pursuing this argument, Defendants fail to acknowledge a critical word in § 289—"any." Section 289 states that if the patented design is applied to any article of manufacture, total profits are recoverable.  The use of "any" indicates that what constitutes an "article of

21

manufacture" is to be interpreted more broadly in § 289 than in § 171.  Section 171 is consistent with Pacific's argument regarding damages.[11]

Pacific's reading of § 289 is consistent with the statutory text and purpose. Accordingly, Defendants' motion for summary judgment must be denied with respect to damages.

V.   **Conclusion**

For the reasons stated herein, the motions for summary judgment must be denied in part.  Defendants are not entitled to summary judgment on Pacific's patent infringement claims, on Defendants' defense of shop right, or on limitation of damages.  Pacific is not entitled to summary judgment on Defendants' counterclaims relating to the '070 Patent. Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendants' motion for summary judgment (Doc. 211) and Pacific's motion for summary judgment (Doc. 176) are **DENIED IN PART** as stated in this Order.  The Court reserves ruling on the remaining issues raised by the parties.

**DONE** and **ORDERED** in Orlando, Florida, on August 22, 2014.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

---

[11] Defendants also rely on two cases for their argument that Pacific should only be entitled to profit on the windshields.  Bush & Lane Piano Co. v. Becker Bros., 222 F. 902 (2d Cir. 1915); Bush & Lane Piano Co. v. Becker Bros., 234 F. 79 (2d Cir. 1916).  These cases are not binding on this Court, and the more recent authority discussed in this Order is more persuasive than these cases.